FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

14 MAR 28 PM 12:45

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:13CR104 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLEA AGREEMENT** |
| JASON FLANARY, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Deborah R. Gilg, United States Attorney and, Keith Becker, DOJ Trial Attorney; Sara Chang, DOJ Trial Attorney; Michael P. Norris, Assistant United States Attorney and defendant, JASON FLANARY, and Clarence E. Mock, counsel for defendant, as follows:

## I

## THE PLEA

A.  CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Count I of the Indictment charging Engaging in a Child Exploitation Enterprise in violation of Title 18, United States Code, Section 2252A(g). The Defendant further agrees to admit to the Allegation of Forfeiture and forfeit the property listed therein to the United States.

B.  In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1.  The United States will move to dismiss Counts II, III, IV, V, VI and VII at the time of sentencing.

## II

## NATURE OF THE OFFENSE

A.  ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements: 1) The Defendant violated Chapter 110 of Title 18; 2) The violation was part

1

of a series of three or more separate incidents; 3) The series of violations involved more than one minor victim; and 4) the Defendant committed the violations in concert with at least three other individuals.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

As described in the Indictment, "Website A," was a child pornography social networking website whose primary purpose was the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children. "Website A" operated from March of 2012 until December of 2012. The name of "Website A" contained a term referring to a sexual interest in children. As of December 8, 2012, the site listed over 8,100 members. The rules of the site, which were accessible on the main page to anyone who accessed "Website A," described it as a tool for communication among pedophiles to discuss their interests and share "content" - content referring to child pornography.

Users could register on "Website A" with a username and a password. Once registered, users could set up a profile that included a picture, personal information, contact information, and other functions such as blogs, uploaded files, web pages, or polls. Many users had a user photo, sometimes called an "avatar," that was in and of itself an image of child pornography. Users could also create a display name associated with their account.

"Website A" contained a section that compiled all files posted by members. Within that section were images and videos. The section contained more than 17,000 images, all of which depicted children. All of those images were accessible to any user who accessed the site, whether registered or not. Those images depicted minor children engaging in sexually explicit conduct with adults or other children, minor children posed while exposing their genitals, or images of child erotica. Most of those images were of prepubescent children. Many of those images depicted infant and toddler-aged children being sexually abused by adults or posed to expose their genitals. The section also contained approximately 120 videos. Videos posted included videos of minor children, some of whom are prepubescent, engaging in sexually explicit conduct with adults or other children.

2

"Website A" also contained a section for members to set up groups. There were over 300 groups on "Website A." Any member could start a group. Within a group, members could post images and messages which were visible to all group members. Groups could be open or closed. The vast majority of groups on "Website A" were open. In an open group, all users who access the board, even those who had not registered and logged in with a username and password, could view images and messages posted to the group. In a closed group, messages and images were visible only to group members.

The names and descriptions of all groups on "Website A" were listed and visible to anyone who accessed the site, whether the group was open or closed. The number of members in any given group varied from a handful to dozens to hundreds to over a thousand. Open groups which were accessible to all users essentially functioned as labels or subcategories for postings of distinct types of child pornography on the site. For example, there was a group with over 1,000 members whose group description stated it was for pictures and videos produced only in 2012. That group contained numerous images of infant and toddler aged children whose genitals are exposed and/or are being subjected to sexual abuse. Other open groups on "Website A" were dedicated to, for example: sexually explicit images of kindergarten age girls ages 4-8 and images of infant and toddler aged children being sodomized. Other open groups with more than 100 members included groups dedicated to incest, female pedophiles, boy pedophiles, pedophilic videos with "no limits" - which refers to violent sexual activity; and videos of infant children. Within those groups, the group descriptions and images posted within them were consistent with their group titles. All of those groups contained images of minor children engaging in sexually explicit conduct with adults or other children, or posed to expose their genitals.

"Website A" users utilized advanced technological means in order to undermine law enforcement's attempts to identify them. For example, "Website A" was technically designed to facilitate anonymous communication by its users, whether they were registered or not. Only a user who had installed special software on the user's computer could access "Website A." That software enabled the communications of "Website A" users to be routed through multiple computers in order prevent communications from being traced back to the users.

JASON FLANARY a/k/a iceman6791, was a registered member of "Website A" who used the screen name "iceman6791." FLANARY registered on "Website A" on October 12,

3

2012. During the course of his membership, including on October 12, 14, 16, and 18, 2012, FLANARY uploaded child pornography images to "Website A."

As iceman6791, FLANARY stated in postings to Website A that he had resided in the Philippines for several years and that he had extensive experience engaging in sex with minors in the Philippines. He also provided advice about how to engage in illicit sex with minors without being caught by law enforcement. Between approximately October 1, 2012, and approximately October 16, 2012, FLANARY posted dozens of images of child pornography to Website A. The vast majority of those images of child pornography depicted prepubescent or near-pubescent Philipina female children, who were engaged in sexually explicit conduct with adults or other children, or posed so as to lasciviously display their genitals. FLANARY stated in postings that he produced several of those pictures and sexually abused several of those children himself. For example, on October 16, 2012, FLANARY posted messages to Website A describing how he regularly met with a fifteen-year old girl in a particular location in the Philippines and engaged in sex with her. Attached to those postings were images depicting a Philipina female who appeared from her stature and level of development to be a near-pubescent minor, performing sexual acts on an adult Caucasian male whose face was not visible in the image. In one of those images, a school identification card is visible which appears to be that of a high school in Manilla, the Philippines. Internet searches revealed that a school uniform that the depicted female is wearing in some images appears to be the same school uniform worn by children at that high school in Manilla, the Philippines.

It is not alleged that FLANARY actually produced the images that he uploaded to "Website A."

On December 12, 2012, JASON FLANARY was charged via criminal complaint with child pornography offenses and a warrant for his arrest was issued by the United States District Court for the District of Nebraska.

On February 28, 2013, JASON FLANARY was found and arrested at Hagatna Library in Guam by US Marshals, to where he had traveled after leaving the Philippines. At the time of arrest, FLANARY was using a computer located on the third floor of the Hagatna Library. A search of his person incident to arrest found him in possession of a 16GB flash drive and other miscellaneous items. Child pornography, including cimages that FLANARY uploaded to

4

"Website A," was found through forensic examination on both the flash drive and the library computer.

## III
## PENALTIES

A.  Defendant understands that the crime to which defendant is pleading guilty, Engaging in a Child Exploitation Enterprise, carries the following penalties:

1. A mandatory minimum of twenty (20) years with a maximum of life in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of at least 5 years and up to life. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.
6. A requirement to register as a sex offender.

## IV
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE DISTRICT OF NEBRASKA AND THE UNITED STATES DEPARTMENT OF JUSTICE

This plea agreement is limited to the United States Department of Justice and the United States Attorney's Office for the District of Nebraska, and cannot bind any other state or local prosecuting, administrative, or regulatory authorities.

## V
## PARTIES' SENTENCING RECOMMENDATIONS

A.  SENTENCING GUIDELINE CALCULATIONS.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree that the defendant shall receive a sentence of 20 years. The court retains the discretion to impose any term of supervised release from 5 years to life, conditions of supervised release, fine and restitution as it deems appropriate.

B.  ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

The parties further agree the Defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the Defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.

C.  CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category.

D.  "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

## VII

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant hereby knowingly and expressly waives any rights to appeal with two limited exceptions. First, Defendant retains the right to appeal an order of restitution. Second, Defendant retains the right to appeal a sentencing guidelines enhancement based on organizer and leader (§3B1.1(a)) or a substantively unreasonable sentence. Defendant otherwise waives all other rights of appeal, including a waiver of all motions, objections and defenses. Defendant could assert to the charges or the Court's entry of Judgment against the Defendant.

Defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

        (a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

        (b) The right to seek post-conviction relief based on ineffective assistance of counsel, or prosecutorial misconduct, if the grounds for such claim could not be known by the defendant at the time the Defendant enters the guilty plea contemplated by this plea agreement.

If Defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VIII

## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the Defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the Defendant commits a crime or otherwise violates any term or condition of this plea agreement, the Defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## IX

## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, Defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. Defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against Defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. Defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, Defendant waives the right to withdraw Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). Defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of

8

Criminal Procedure 11(c)(5). Furthermore, Defendant understands that if the court rejects the plea agreement, whether or not Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and Defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## X

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

This agreement ends all plea discussions. No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## XI

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that defendant read it. Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XII

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel's representation.

\_\_\_3/24/14\_\_\_
Date

\_\_\_3/24/14\_\_\_
Date

UNITED STATES OF AMERICA
DEBORAH R. GILG
United States Attorney

MICHAEL P. NORRIS
ASSISTANT U.S. ATTORNEY

KEITH BECKER
TRIAL ATTORNEY

9

3/14/14
Date

3/4/2014
Date

3/4/2014
Date

SARAH CHANG
TRIAL ATTORNEY

JASON FLANARY
DEFENDANT

CLARENCE E. MOCK III
COUNSEL FOR DEFENDANT